IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DORIS E. ROBINSON,

        Plaintiff,

vs.

        Case No. 06-1229-JTM

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

MEMORANDUM AND ORDER

The present matter arises on plaintiff's appeal (Dkt. No. 8) after a denial of applications made under the Social Security Act. For the following reasons, the court denies plaintiff's appeal.

*I. Factual Background:*

Plaintiff filed an application for benefits under Title II of the Social Security Act on May 23, 2003 and protectively filed an application for SSI under Title XVI on June 12, 2003. Plaintiff noted that her disability began on March 20, 2001. On January 17, 2006, an administrative law judge ("ALJ") found plaintiff was not under a "disability" under the Social Security Act. The Appeals Council of the Social Security Administration denied plaintiff's request for a review, rendering the decision of the ALJ as the final decision of the Commissioner.

At an evidentiary hearing, the following evidence was presented. Plaintiff received a GED and completed one and one-half years of college. She stated she could walk up to one mile

"on a good day" and two to three blocks on "most days." Transcript, at 508. Additionally, plaintiff testified that she spent four to five hours per day reclining, did some arts and crafts, read, watched television, walked her dogs, did most of her cooking, and some of her laundry and cleaning.

For the treatment of hepatitis C, she took two kinds of treatment, but continued to have difficulty with anemia, chronic diarrhea, dizziness, passing out, severe pain and short-term memory loss. Additionally, she had back pain across her lower back and to the right hip and leg. Plaintiff also testified that she was not undergoing any current treatment; used four different types of inhalers to treat her asthma; and suffered headaches daily, but only severe headaches once every three to six months.

Plaintiff also stated that she was treated for bipolar disorder since she was 16. During a given depressive episode, she testified that she stayed in her room and did not talk to anyone. During a manic episode, she described spending a large portion of time cleaning and having outbursts.

William Pfizer, who saw plaintiff on a daily basis, testified that he had observed plaintiff have "everything from bouts of crying to nervousness to fits of being lethargic, an inability to sleep sometimes or other times sleeping way too many hours . . . feelings of persecutions from other people, thoughts of self destruction, . . . self-worthlessness." Tr., at 528.

Additionally, Anne Winkler, M.D., Ph.D., testified as a medical expert. Dr. Winkler noted that plaintiff had chronic hepatitis C infection, psychiatric problems, osteoporosis, and anemia. The physician noted that plaintiff's hepatitis C did not meet the criteria of Listing § 5.05. Based on her opinion, although patients with high viral loads of hepatitis C show

"actually no symptoms at all," she indicated that reasonable symptoms included mild fatigue, abdominal bloating due to mild swelling of the liver, low grade fever or sweats. Tr., at 520. Plaintiff received hepatitis C treatments from approximately October 2003 to February 2004, but the treatment was stopped due to side effects including weight loss.

Dr. Winkler completed a physical medical source statement on May 9, 2005. Dr. Winkler reported that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, and was unlimited in the ability to sit. Dr. Winkler also noted that plaintiff could occasionally climb, kneel, crouch, crawl and stoop, and frequently balance. Dr. Winkler concluded that plaintiff should avoid sharp implements due to hepatitis C.

Robin Cook also testified as a vocational expert. The hypothetical posed to Ms. Cook assumed an individual of plaintiff's age, education, and past work experience. Under the hypothetical, the individual could lift 20 pounds occasionally and 10 pounds frequently, stand and walk 6 hours in an 8-hour workday with normal breaks, and sit without restriction for 6 hours of an 8-hour workday with normal breaks. The hypothetical also assumed that the individual could occasionally climb, kneel, crouch, crawl and stoop, and frequently balance, but that the individual should avoid sharp implements due to hepatitis C. Under the scenario, the vocational expert reported that such an individual could perform past relevant work as a cashier or telephone operator. She further testified that these limitations would erode only eight percent of the total unskilled light exertional job base and would have no effect on the unskilled sedentary job base. Ms. Cook also testified that the individual could also perform the positions of a laundry folder, ticket marker, surveillance system monitor, hand mounter/photo finisher, small parts assembler, and racker.

On appeal, plaintiff argues that the ALJ improperly failed to give controlling weight to the opinions of her treating physicians and their medical source statements. Additionally, plaintiff argues that the ALJ erred in determining her residual functional capacity ("RFC") which did not incorporate sufficient limitations connected to her severe medically determinable impairments of hepatitis C, asthma, migraine headaches, osteoarthritis, bipolar disorder, and anemia.

## II.  Standard of Review:

This court's review of the Commissioner's determination is limited. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992). The responsibility of this court is to determine whether the decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Reversal is appropriate if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1114.

## III.  Conclusions of Law:

Under 20 C.F.R. § 404.1512(a), plaintiff must demonstrate that she was unable to work because of a medically determinable impairment which lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404 1512(a). *See also Mathews v. Eldridge*, 424 U.S. 319, 339

(1976); *Barnhart v. Walton*, 535 U.S. 212 (2002) (upholding the Commissioner's interpretation of the statutory definition which requires that the disability, not only the impairment, must have existed or be expected to exist for 12 months).

In demonstrating the existence of a determinable impairment lasting for a continuous period of at least 12 months, the Commissioner's regulations set forth a five-step sequential evaluation process ("SEP") which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). In steps 1-3, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether she has a medically determinable impairment that is "severe" under the Act, and whether plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, supt. P, app.1. *Id*.

At step four of the process, the ALJ must address three phases in making a determination. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). The first phase requires an evaluation of the claimant's residual functional capacity (RFC). *Id.* at 1023. The second phase entails an examination of the demands of the claimant's past relevant work. *Id*. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. Specific findings are required at all phases. *Id*.

A.  <u>Steps One Through Three Challenge:</u>

Specifically, plaintiff alleges that the ALJ failed to give controlling weight to the opinions of her treating physicians and their medical source statements.

"The ALJ is required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and

5

prognosis, and any physical or mental restrictions if 'it is well supported by clinical and laboratory diagnostic techniques and . . . it is not inconsistent with other substantial evidence in the record.'" *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quoting *Castellano v. Sect'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)). A physician's statement whether an individual is or is not able to work is a conclusion upon the ultimate issue and is not determinative, although it is evidence, the weight of which depends upon the "extent to which it is supported by scientific and competent medical findings and the extent to which it is consistent with other evidence." *Thompson v. Harris*, 508 F. Supp. 134, 139-40 (D. Kan. 1981).

The court finds that the opinions of Dr. Nassif and Dr. Brewer were properly weighed by the ALJ. First, Dr. Nassif stated in February 2004, nearly three years after the disability onset, that plaintiff was "continuously and chronically disabled and thus unable to perform any type of work." Tr., at 27, 307. The ALJ properly found that Dr. Nassif's opinion was consistent with the opinion of Dr. Winkler and the ALJ's decision, to the extent that the opinion found that plaintiff was disabled at that time, the time immediately following plaintiff's treatment for hepatitis C. The ALJ properly found, however, that the opinion was not consistent with the medical evidence prior to and after the treatment.

Second, although Dr. Nassif indicated that plaintiff's hepatitis C met the criteria of Listing § 5.05, the record did not contain evidence of ascites, as required by § 5.05. Ultimately, the ALJ considered Dr. Nassif's opinion, but properly relied on the opinion of Dr. Winkler, who testified that the medical evidence did not demonstrate the necroris or inflammation persisting for at least 3 months with repeated abnormalities of prothrombin time and enzymes indicative of

hepatic dysfunction as required by § 5.05F(3).  Plaintiff does not demonstrate any evidence beyond Dr. Nassif's indication that shows the specific findings required by § 5.05.

Additionally, the ALJ properly weighed the opinion of Dr. Brewer.  Initially, in February 2005, Dr. Brewer did not "consider [Plaintiff] able to work at this time . . . based on her bipolar disorder" and noted that plaintiff was "not stable enough to work for at least the next 1 year." Tr., at 29, 337-38, 424.

Thereafter, in August 2005, Dr. Brewer completed a mental RFC assessment which reported several moderate to marked limitations in the area of mental functioning.  However, the ALJ properly discredited the report because it was unsupported by mental health progress notes and the evidence of the record.  Specifically, in April 2002, one year after the alleged onset, plaintiff reported that the medication for depression was a "miracle" and that her mood was stable "with minimal to no problems."  Tr., at 231.  Within one month of February 2003, when plaintiff sought treatment, Dr. Nassif noted that plaintiff was "doing better" with mental health treatment and could commence the hepatitis C treatment.  Tr., at 253, 258.  Treatment began in May 2003. On initial examination, plaintiff had "pretty good" mood, neutral and appropriate affect, no indication of psychotic processes, "pretty good" concentration, intact memory and no current suicidal or homicidal ideation.  Tr., at 269-70.  These findings were inconsistent with the RFC assessment completed in August 2005.  Additionally, in February 2005, Dr. Brewer stated that plaintiff was unable to work, but that plaintiff was doing reasonably well with medication and became depressed only situationally from "time to time."  Tr., at 337.  The court finds that these opinions were inconsistent.  Thus, the ALJ properly discredited Dr. Brewer's evidence.

*B.  Step Four Challenge:*

Finally, plaintiff alleges that the ALJ failed to apply the appropriate legal test in expressing plaintiff's RFC.

The ALJ determined plaintiff retained the RFC to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and occasionally climb, kneel, crouch, crawl and stoop. Additionally, the ALJ determined that plaintiff could not use knives or sharp objects due to the contagious nature of hepatitis C. Moreover, the ALJ found that plaintiff had a fair ability to relate to co-workers; deal with the public; interact with supervisors; deal with work stresses; understand, remember and carry out complex job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. Additionally, the ALJ determined that plaintiff had a good ability to follow work rules; use judgment; function independently; maintain attention and concentration; understand, remember and carry out detailed but not complex job instructions; understand, remember and carry out simple job instructions; and maintain personal appearance. The vocational expert further testified that an individual like plaintiff would be able to perform plaintiff's past relevant work as a telephone operator. She further testified that the limitations would erode only eight percent of the total unskilled light exertional job base and would not affect the unskilled sedentary exertional job base. From these limitations, the vocational expert identified potential positions such as a laundry folder, ticket marker, surveillance system monitor, hand mounter/photo finisher, small parts assembler, and racker.

Plaintiff argues that the ALJ erred in failing to include a limitation regarding the handling of food resulting from plaintiff's hepatitis C diagnosis as well as limitations on heights or other

hazards due to dizziness or fainting from anemia. However, the jobs identified by the vocational expert do not involve food handling, heights, or hazards. Therefore, the addition of these limitations would not affect the ALJ's determination.

Additionally, plaintiff alleges that the ALJ erred by failing to include a limitation due to fatigue in the RFC. Plaintiff has the burden of proving the RFC as part of step four of the sequential evaluation process. *See Doyal v. Barnhart*, 331 F.3d 758, 760-61 (10th Cir. 2003). First, the ALJ limited the RFC to light exertional work, which takes into account plaintiff's limitations. Moreover, the medical evidence demonstrates intermittent complaints of fatigue. Although plaintiff cites Dr. Winkler's opinion that the symptoms of hepatitis C could include "mild fatigue," Dr. Winkler also stated that many patients with high viral loads of hepatitis C show "actually no symptoms at all" and function "very normally." Tr., at 518. Thus, the ALJ applied the appropriate legal test.

Finally, plaintiff asserts that the RFC lacked limitations due to asthma, frequent use of an inhaler, and the need to rest due to headaches. However, the medical evidence demonstrated that plaintiff's asthma was controlled by medication and resulted in few symptoms. Specifically, on examinations, plaintiff denied shortness of breath and showed predominantly clear lungs. In April 2003, Dr. Battin stated that plaintiff's asthma was "well-controlled" and plaintiff was "not having difficulties" with that condition. In April 2004, Dr. Battin reported no respiratory problems with plaintiff. The ALJ did not fail to apply the appropriate legal test because the evidence as a whole supported his finding that no limitation due to asthma was necessary. Therefore, the court denies plaintiff's appeal.

IT IS ACCORDINGLY ORDERED this 31st day of July, 2007, that plaintiff's appeal (Dkt. No. 8) is denied.

                                                    s/ J. Thomas Marten
                                                   J. THOMAS MARTEN, JUDGE